IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMIE MCCARTER, #K04505,

        Plaintiff,

v.

DR. BROOKHART,
LUKING (N.P.),
MRS. CUNNINGHAM,
HAYLEY KERMICLE,
and ALLYSON FISCUS (R.N.),[1]

        Defendant.

Case No. 21-cv-0062-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Now before the Court is the motion for summary judgment for failure to exhaust administrative remedies filed by Defendant Luking (Doc. 44), which Defendant Fiscus joined. (Docs. 81, 82).[2] At this time, Defendant Kermicle has not yet been served with summons. (Docs. 49, 50, 59, 60, 67).

The Court held an evidentiary hearing on the motion on August 1, 2022. For the reasons set forth below, the motion for summary judgment is **DENIED**.

### BACKGROUND

Plaintiff Jamie McCarter is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center. In a Complaint filed on January 15, 2021 (Doc. 1), he alleges that Defendants were deliberately indifferent to his abdominal pain

---

[1] Defendant A. Fiscus has further identified herself as Allyson Fiscus (Doc. 76); the Clerk shall be directed to correct her name accordingly.
[2] Defendants Brookhart and Cunningham had earlier filed a similar motion (Doc. 39) to which Plaintiff responded (Doc. 42); however, they withdrew their exhaustion defense and the motion. (Docs. 83, 84).

Page 1 of 11

while he was confined at Lawrence Correctional Center. Upon initial review of the Complaint, Plaintiff was allowed to proceed on the following single count:

> **Eighth Amendment deliberate indifference claim against Brookhart, Luking, Cunningham, and Nurse Jane Doe [3] for delaying and denying care for McCarter's abdominal pain.**

(Doc. 15).

On June 2, 2022, over the objection of three Defendants, the Court granted Plaintiff leave to file his First Amended Complaint (Docs. 64, 65). The First Amended Complaint added factual allegations against Defendants Kermicle and Fiscus.

In the First Amended Complaint, Plaintiff states he began seeing blood in his stool and urine around May 31, 2019 and consulted Defendant Kermicle about the problem.[4] (Doc. 65, pp. 3-4, 17). Kermicle did a urine test but Plaintiff never heard anything about the results. (Doc. 65, p. 4). Plaintiff saw Defendant Fiscus on September 3, 2019 but she dismissed his complaint of abdominal pain as gas. (Doc. 65, pp. 4-5, 19-20). On September 16, 2019, Plaintiff consulted Defendant Luking about his abdominal pain and the blood in his stool. (Doc. 65, pp. 5, 24-25). Luking said she would refer Plaintiff to a doctor but never did so. *Id.* Plaintiff submitted another request to health care for his abdominal pain, as well as a grievance, but got no response to either. (Doc. 65, p. 6). He wrote to Defendant Brookhart about the lack of medical attention but got no response. (Doc 65, pp. 6, 22-23). On February 2, 2020, Plaintiff began vomiting blood; he was transferred to an outside hospital where he had emergency surgery and was diagnosed with helicobacter pylori and a peptic ulcer. (Doc. 65, pp. 7-8)

Defendants Luking and Fiscus argue that Plaintiff submitted his lawsuit prematurely

---

[3] Plaintiff later identified the "Jane Doe" Nurse as two individuals, Hayley Kermicle and A. Fiscus. (Docs. 47, 49, 54, 55).
[4] In the original Complaint, Plaintiff alleged an onset of symptoms (abdominal pain) around September 2019. (Doc. 1, p. 2).

because he filed this case approximately two weeks before the ARB issued its response to his appeal. (Doc. 45, pp. 2, 6-7). Fiscus also claims that Plaintiff failed to timely grieve her alleged misconduct as his encounter with her was more than 60 days before he filed his grievance. Plaintiff did not file a response to this motion, but had responded to Brookhart and Cunningham's withdrawn exhaustion motion by arguing that he submitted his appeal in a timely manner in accordance with prison procedures. (Doc. 42, pp. 2-3, 14-15). The Court has considered Plaintiff's response as it relates to the instant motion (Doc. 44).

*I. Emergency Grievance (#03-20-065) – First Submission*

Plaintiff submitted Emergency Grievance (#03-20-065) on March 4, 2020; Brookhart ordered it to be expedited as an emergency. (Doc. 45-1, pp. 12-13).[5] Plaintiff describes his unsuccessful efforts to obtain medical attention for his abdominal pain and bloody stool since approximately September 2019, including his September 13, 2019 letter to Brookhart and a grievance submitted that month which yielded no response, culminating with his February 4, 2020 emergency surgery and diagnosis with the bacterial infection and peptic ulcer. (Doc. 45-1, p. 13). Plaintiff included a copy of his September 13, 2019, letter to Brookhart. (Doc. 45-1, pp. 14-15).

On March 12, 2020, the Grievance Officer issued a written response noting that Plaintiff had been approved for an EGD (upper GI endoscopy)[6] and was receiving regular treatment, and recommending the grievance be deemed partially moot (regarding this care) and partially unable to substantiate (regarding Plaintiff's claims that he requested care and got no response). (Doc. 45-1, p. 11). The warden concurred on March 19, 2020, and Plaintiff signed the document on March 27, 2020, indicating his intent to appeal. (Doc. 45-1, p. 11). Notably, this document, attached to

---

[5] Exhibit A to Luking's Motion for Summary Judgment (Doc. 45-1) contains the ARB's records of Plaintiff's appeals.
[6] See https://my.clevelandclinic.org/health/diagnostics/22549-esophagogastroduodenoscopy-egd-test (last visited July 28, 2022).

Luking's motion for summary judgment, displays a stamp showing Plaintiff's appeal was received by the ARB on April 7, 2020, within 30 days of the warden's written decision. *Id*.

On January 26, 2021, the ARB finally responded to Plaintiff's appeal of Grievance Number 03-20-65 (received on April 7, 2020) by ruling it moot because Plaintiff had been approved for EGD and was being seen regularly. (Doc. 45-1, p. 10).

## II. Second Submission – Status Inquiry on Emergency Grievance (#03-20-065)

On April 10, 2020, Plaintiff sent a letter to the ARB inquiring about the status of the grievance appeal he had sent about a week prior. (Doc. 45-1, p. 25). The letter was stamped as received by the ARB on April 27, 2020. Also stamped with the same receipt date are duplicate copies of Plaintiff's original grievance, the grievance officer's response, and Plaintiff's letter to Brookhart. (Doc. 45-1, pp. 20-24). On September 2, 2020, the ARB responded to this inquiry by stating the "appeal" of Grievance No. 3-20-65 was received on April 27, 2020, which was past the 30-day deadline and the matter would not be addressed further. (Doc. 45-1, p. 19).

The contents of the ARB's September 2, 2020 response to Plaintiff's inquiry and its January 26, 2021 disposition of Plaintiff's timely appeal indicate no awareness by the ARB that it issued two different (and inconsistent) responses to the same grievance.

## III. Emergency Grievance (#04-20-294)

Defendants mention this separate grievance submitted by Plaintiff on April 18, 2020, regarding not getting his stomach medication for two weeks. (Doc. 40, pp. 3-4; Doc. 45-1, pp. 16-18). This grievance was deemed an emergency and found moot by the grievance officer and the CAO. The ARB did not review Plaintiff's appeal because he did not provide a date for the incident. (Doc. 45-1, p. 16).

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

### *II. Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398

(7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

  While strict compliance with the exhaustion requirement is the rule in this Circuit, an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id*.; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).

  The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738). For example, an administrative procedure is

unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Ross*, 578 U.S. at 643 (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Id.* The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance

Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023-24.

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

## DISCUSSION

At the evidentiary hearing, Administrative Review Board chairperson Adewale Kuforiji testified for Defendants Fiscus and Luking. In 2020 in his capacity as an ARB staff member, he reviewed Plaintiff's appeal to the ARB and signed both responses to Plaintiff's grievance # 03-20-065. Due to the COVID-19 pandemic, the ARB closed its office for 3-4 months starting approximately March 16, 2020, and thereafter reopened with only a skeleton staff for the rest of 2020. Consequently, the ARB's processing of grievance appeals was significantly delayed. To

catch up on the backlog, they triaged grievances by first responding to those that did not qualify for review on their merits, such as Plaintiff's resubmission of grievance # 03-20-065 on April 10, 2020 along with his letter of inquiry – which Kuforiji rejected on September 2, 2020 without review of the merits because it was submitted beyond the 30-day time frame following the CAO's ruling. As time went on, the ARB addressed timely-submitted grievances on the merits, including Plaintiff's original appeal received by the ARB on April 7, 2020. Kuforiji stated that appeal was properly submitted. He ultimately issued his ruling on that appeal on January 26, 2021. Kuforiji testified that because of the pandemic, it was not feasible for ARB to review grievances within six months of their receipt, as the Illinois Administrative Code directs. Kuforiji acknowledged that Plaintiff's April 2020 resubmission of his grievance # 03-20-065 was an exact duplicate of his original, timely submission – however, he did not mention this duplication in the written decision issued to Plaintiff on September 2, 2020 or in the final January 2021 ruling.

      Kuforiji further opined that Plaintiff's grievance # 03-20-065 was not timely as to his complaints about medical staff's failure to treat him in September 2019 or on earlier dates, because the grievance was submitted more than 60 days after those occurrences. Plaintiff responded that his March 2020 grievance was timely because he submitted it as soon as discovered the injury, when he was diagnosed with a serious illness that staff previously failed to investigate or treat.

      Plaintiff stated, in response to the Court's questioning, that when he received the first (September 2020) ARB response to his appeal, dismissing it as untimely, he believed that was the final step in processing his appeal and he did not think there were any further steps to take in the grievance process. Normally the ARB would send an acknowledgement that an appeal was received, but he did not get any such receipt after his first submission of grievance # 03-20-065. That was why he sent his inquiry letter on April 10, 2020. He did not know that the pandemic had

any effect on the processing of his appeal.

Neither party further addressed Plaintiff's emergency grievance #04-20-294 regarding a medication issue, and the Court concludes that grievance has no relevance to Plaintiff's claims in this case or to the exhaustion question.

Based on the above testimony and on the ARB records produced prior to the evidentiary hearing, the Court concludes that Plaintiff satisfied the exhaustion requirement as to Emergency Grievance #03-20-065. He timely submitted his appeal, and the ARB's handling of Plaintiff's April 10, 2020 inquiry on the status of the appeal created confusion such that Plaintiff had no way to know that the ARB would still consider his appeal on the merits and ultimately issue a ruling on January 26, 2021. The ARB's September 2, 2020 response failed to acknowledge that Plaintiff's second submission of his grievance was a duplicate of his first and was in fact an inquiry as to whether the ARB received the original submission. The ARB told Plaintiff that his appeal (actually his inquiry) was untimely and was therefore rejected. That response misled Plaintiff to believe that his appeal was over. This scenario effectively rendered the administrative appeal process unavailable to Plaintiff. While the Court understands the difficulties the ARB experienced in processing appeals because of the COVID-19 pandemic, Plaintiff took all the necessary steps to properly exhaust his appeal and could not have known that the ARB would eventually rule on its merits some ten days after he filed this action. Accordingly, the motion for summary judgment will be denied.

## DISPOSITION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment on Exhaustion of Administrative Remedies filed by Defendant Luking (Doc. 44) and joined by Defendant Fiscus (Docs. 81, 82) is **DENIED**.

The matter of exhaustion of administrative remedies now being resolved as to all the parties who have appeared, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

The Clerk is **DIRECTED** to correct Defendant A. Fiscus' name in accordance with footnote 1 above.

**IT IS SO ORDERED.**

**DATED: August 1, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**